**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LATEESIA LYNETTE COLLAR** | **CIVIL ACTION NO.** |
| **VERSUS** | **22-1026 JWD-EWD** |
| **COMMISSIONER OF SOCIAL SECURITY** | |

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 22, 2024.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LATEESIA LYNETTE COLLAR                                CIVIL ACTION NO.

VERSUS                                                 22-1026 JWD-EWD

COMMISSIONER OF SOCIAL SECURITY

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Lateesia Collar ("Plaintiff") seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her application for disability insurance benefits ("DIB").[1] Because the correct legal standards were applied and substantial evidence supports it, the Commissioner's decision should be affirmed.

**I.    BACKGROUND**

In October 2020, at the age of 47, Plaintiff filed a Title II application for DIB, alleging disability beginning July 6, 2020 due to blood clots; pulmonary embolism; chest issues; headaches; and a brain tumor.[2] Plaintiff's claim was initially denied on January 27, 2021,[3] and her request for reconsideration was denied on May 24, 2021.[4] Plaintiff then requested a hearing before an ALJ.[5] On February 10, 2022, a hearing was conducted before the ALJ.[6] Plaintiff, who was represented by counsel, testified at the hearing along with Vocational Expert, Wallace Stanfill ("VE").

On March 30, 2022, the ALJ issued a decision finding the Plaintiff was not disabled and therefore not entitled to disability benefits.[7] The ALJ found Plaintiff could perform sedentary

---

[1] R. Doc. 10-6, pp. 2-3 (application for DIB); and R. Doc. 10-3, pp. 2-8 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]," based on where the document appears in the Court's electronic record.
[2] R. Doc. 10-4, pp. 2-3.
[3] R. Doc. 10-4, pp. 2-14 (Disability Determination Explanation); R. Doc. 10-5, pp. 2-5 (notice of disapproved claim).
[4] R. Doc. 10-5, p. 6 (request for reconsideration); R. Doc. 10-5, pp. 14-17 (denial on reconsideration).
[5] R. Doc. 10-5, p. 18-20.
[6] R. Doc. 10-3, pp. 103-130.
[7] R. Doc. 10-3, pp. 14-28 (Notice of Unfavorable Decision and Decision).

work with some additional postural and environmental limitations.[8] Then, relying on the VE's testimony, the ALJ determined that Plaintiff could not return to her past relevant employment as a nurse's aide, but she was capable of working as a sorter, order clerk, or charge account clerk—jobs found to exist in significant numbers in the national economy.[9]

On October 13, 2022, the Appeals Council denied a request to review the ALJ's decision, making the ALJ's unfavorable decision the Commissioner's final decision.[10] Plaintiff timely filed this case on December 16, 2022, seeking review of the Commissioner's decision under 42 U.S.C. § 405(g).[11]

## II. LAW AND ANALYSIS

### A. Standard of Review

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party.[12] Review of the ALJ's disability determination is limited to ascertaining whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision.[13] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[14] If the Commissioner fails to apply the correct legal standards or fails to provide the

---

[8] R. Doc. 10-3, p. 21-22.
[9] R. Doc. 10-3, pp. 26-27.
[10] R. Doc. 10-3, pp. 2-8. *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").
[11] R. Doc. 1. According to the Appeals Council's denial letter, a claimant is presumed to receive the letter 5 days after its date. R. Doc. 10-3, p. 4. Plaintiff then had 60 days, or until December 19, 2022 to file in federal court.
[12] 42 U.S.C. § 405(g).
[13] *Williams v. Astrue*, 355 Fed.Appx. 828, 830 (5th Cir. 2009), citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).
[14] 42 U.S.C. § 405(g); *Qualls v. Astrue*, 339 Fed.Appx. 461, 463 (5th Cir. 2009), citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[15] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[16] Conflicts in the evidence are for the ALJ to resolve, not the courts.[17] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[18]

**B. Assignments of Error**

On appeal, Plaintiff urges the Court to find that the ALJ's decision fails to comport with 20 C.F.R. § 404.1520c, which establishes how the Commissioner must consider medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. According to Plaintiff, the absenteeism and concentration limitations suggested by her treating nurse practitioner and neurologist, if adopted, would have resulted in a determination that Plaintiff is disabled. Plaintiff also argues that the ALJ's decision not to fully adopt any of the medical opinions or prior administrative medical findings in the record resulted in an RFC determination that lacked guidance from a medical professional.

Plaintiff essentially seeks to have this Court reweigh the evidence to afford greater deference to the medical opinions offered by her treating providers. Because the ALJ followed the proper legal standards and substantial evidence supports the decision, it should be affirmed.

---

[15] *Qualls*, 339 Fed.Appx. at 463, citing *Consolidated Edison Co. of New York v. NLRB*, *No. 19*, 305 U.S. 197, 217 (1938).
[16] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).
[17] *Qualls*, 339 Fed.Appx. at 464, citing *Selders*, 914 F.2d at 617.
[18] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

### C. The ALJ Applied the Proper Legal Standards to the Evaluation of Medical Evidence and Substantial Evidence Supports the Decision

#### 1. Revised Legal Standard on Treatment and Articulation of Medical Opinions and Prior Administrative Medical Findings

In the course of the sequential analysis, the ALJ must decide the claimant's residual functional capacity ("RFC"), which is defined as the most the claimant can still do despite her physical and mental limitations based on all relevant evidence in the claimant's record.[19] The RFC determination is solely the responsibility of the ALJ.[20] When making the RFC determination, the ALJ must consider all medical opinions contained in the record.[21] As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight given to their opinions.[22]

ALJs are no longer required to give more significant weight to a treating physician's opinion, as the federal regulations previously mandated.[23] For claims, such as this one, filed after March 27, 2017, an ALJ instead considers a list of factors to determine what weight, if any, to give a medical opinion.[24] The most important factors for determining the persuasiveness of medical opinions and prior administrative medical findings are supportability[25] and consistency.[26] The ALJ must explain the supportability and consistency factors for a medical source's medical

---

[19] *Ray v. Commissioner of Social Security*, No. 21-1709, 2022 WL 3566844, at *3 (S.D. Tex. Aug.17, 2022), citing *Winston v. Berryhill*, 755 Fed.Appx. 395, 399 (5th Cir. 2018).
[20] *Ray,* 2022 WL 3566844, at *3, citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).
[21] *Id.*
[22] *Ray*, 2022 WL 3566844, at *3, citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).
[23] *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021), comparing 20 C.F.R. § 404.1527 (2016), with 20 C.F.R. § 404.1520c.
[24] 20 C.F.R. § 404.1520c
[25] The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(1).
[26] The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(2).

opinions or prior administrative findings in her determination, and she may, but is not required to, explain how she considered the additional factors set forth in (c)(3) through (c)(5) of the regulation, including relationship with the claimant, specialization, and "other factors."[27] Only if the ALJ finds that there are two or more medical opinions or prior administrative findings about the same issue that are both equally well-supported and consistent with the record but not exactly the same is the ALJ required to articulate consideration of the (c)(3) through (c)(5) factors.[28]

### 2. The ALJ Adequately Explained Her Consideration of the Medical Evidence Under 20 C.F.R. § 404.1520c

On appeal, the Plaintiff primarily argues that the ALJ failed to adequately articulate how she considered the supportability and consistency factors of the medical opinions provided by Jai Sharra Bryant, FNP-C ("FNP Bryant") and Aaron Gerald Mammoser, MD ("Dr. Mammoser"). However, the medical opinions were properly evaluated.

<u>FNP Bryant Medical Opinion</u>

In a Functional Capacity Questionnaire, FNP Bryant opined that the Plaintiff could stand and walk less than 2 hours during an 8 hour workday, but had no limitation with respect to her ability to sit during an 8 hour workday.[29] FNP Bryant also opined that Plaintiff would need an opportunity to shift at will from sitting or standing/walking on an hourly basis, and, three times per week, Plaintiff would need to lie down at unpredictable intervals during an 8-hour shift for pain relief.[30] According to FNP Bryant, Plaintiff would also frequently have pain severe enough to interfere with the attention and concentration needed to perform even simple tasks.[31] FNP

---

[27] *See* 20 C.F.R. § 404.1520c(c)(3)-(c)(5); *Governor v. Commissioner of Social Security*, No. 20-54, 2021 WL 1151580, at *7 (M.D. La. Mar. 02, 2021). The "other factors" include, but are not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.
[28] 20 C.F.R. § 404.1520c(b)(3).
[29] R. Doc. 10-11, p. 295.
[30] *Id.*
[31] *Id.*

5

Bryant anticipated that the Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month.[32]

In her evaluation of FNP Bryant's medical opinion, the ALJ found persuasive the portion of the opinion that indicated no sitting limitation was required for the Plaintiff, as supported by the nature and scope of the Plaintiff's treatment and the objective findings. However, the ALJ rejected other aspects of FNP Bryant's opinion, finding, "there is no basis for a sit/stand at will option or an absenteeism limitation."[33]

Plaintiff cites the ALJ's three-sentence paragraph discussing FNP Bryant's medical opinion as evidence the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1520c. Just two paragraphs later, however, the ALJ further explained the decision not to incorporate additional limitations into the RFC, citing Plaintiff's "consistently normal physical and neurological examination findings:"

> The medical evidence showing some physical impairments and associated symptoms supports the limitations in the above residual functional capacity, specifically that the claimant will be limited to the sedentary exertional level with additional postural and environmental limitations. While the undersigned finds that the claimant does have some limitations the record also exhibits consistently normal physical and neurological examination findings.[34]

This statement further explains why the ALJ rejected the more extreme limitations in FNP Bryant's medical opinion.

Elsewhere in the decision, the ALJ described some of the "consistently normal physical and neurological examination findings" found in Plaintiff's medical records, including the following:

---

[32] R. Doc. 10-11, p. 296.
[33] R. Doc. 10-3, p. 26.
[34] R. Doc. 10-3, p. 26.

6

1. July 6, 2020 emergency room visit where the Plaintiff presented with complaints of chest pain. An ECG performed during this time revealed normal findings. The claimant was prescribed medications and discharged the same day.[35]

2. July 14, 2020 emergency room visit seeking treatment for chest pain, headaches, and shortness of breath. It was determined that the Plaintiff exhibited no gross neurological deficits on exam and Plaintiff could move all her extremities equally and well. A head CT scan revealed that Plaintiff had calcification most consistent with a benign dystrophic calcification. The brain MRI suggested the possibility of gliomatosis cerebri (a rare primary diffuse brain tumor). Plaintiff was referred for a neurosurgical evaluation.[36]

3. September 29-30, 2020 emergency room visit presenting with complaints of chest pain, shortness of breath, and nausea. The records note that Plaintiff "has not tried to take any medication to relieve her pain and it worsens at random." Following an angiogram, Plaintiff was noted to exhibit stable findings.[37]

4. October 2021 treatment from providers at the Culicchia Neurological Clinic, where a brain MRI indicated no clear evidence of a tumor and her findings were noted to be "stable" when "compared to previous imaging." It was also noted that her anxiety/depression episodes could be attributable to nonepileptic episodes. Plaintiff's EEG was characterized as "unremarkable."[38]

5. December 14, 2021 emergency room visit with complaints of chest discomfort. Diagnostic testing of the head and chest revealed no abnormal findings.[39]

6. December 17, 2021 emergency room visit with complaints of headaches and chest pain. Plaintiff was noted to have no neurological or focal deficits on exam and no evidence of a postictal state following one of her "absent spells."[40]

Many of these records contain objective medical evidence of normal and stable findings. The ALJ also noted evidence that, when taking her medications as prescribed, Plaintiff's symptoms resolved.[41]

The ALJ found that during the period of treatment at RKM Primary Care from July 11,

---

[35] R. Doc. 10-3, p. 22, citing OLOL records at R. Doc. 10-8, pp. 25-32.
[36] R. Doc. 10-3, pp. 22-23, citing OLOL records at R. Doc. 10-11, pp. 2-9.
[37] R. Doc. 10-3, p. 23, citing OLOL records at R. Doc. 10-11, pp. 13-30.
[38] R. Doc. 10-3, p. 24, citing R. Doc. 10-11, pp. 284-85 (and suggesting possible hemimegalencephaly, a rare genetic condition that causes part of the brain to be abnormally larger than the rest).
[39] R. Doc. 10-3, p. 24, citing OLOL records at R. Doc. 10-10, pp. 251-64.
[40] R. Doc. 10-3, p. 24, citing OLOL records at R. Doc. 10-10, pp. 354-61.
[41] R. Doc. 10-3, p. 25, citing RKM records at R Doc. 10-9, p. 42.

2020 through November 8, 2021, Plaintiff was noted to exhibit normal examination findings and denied a history of any abnormal conditions.[42] For example, after a December 7, 2020 appointment with the Plaintiff, FNP Bryant documented that Plaintiff's headaches were much improved and "manageable compared to previous," and that her chest pain had resolved.[43] After a March 16, 2021 appointment with the Plaintiff, FNP Bryant documented that Plaintiff had a recent ER visit with normal EKG, CT angiogram pulmonary, and chest x-ray.[44]

Dr. Mammoser Medical Opinion

Dr. Mammoser's Medical Impairment Questionnaire reflected that Plaintiff would need to take unscheduled breaks during an 8-hour work day about 2-3 times per week and that she would need to be absent more than three times per month on account of her paroxysmal episodes.[45] Dr. Mammoser also opined that Plaintiff's pain would be severe enough to interfere with the attention and concentration needed to perform even simple tasks on a frequent basis and that she would be absent from work more than three times per month.[46]

The ALJ found that Dr. Mammoser's assessments were inconsistent with the record and unsupported by the objective imaging.[47] The ALJ also found that Dr. Mammoser's opinion regarding attention and concentration overstated the claimant's limitations, citing the Plaintiff's medical records from OLOL on December 14, 2021, which indicated the Plaintiff had, "no obvious neurological deficits on exam, no focal deficit and that she was alert and oriented with normal mood and affect."[48]

---

[42] R. Doc. 10-3, pp. 24-5, citing, *e.g.,* RKM Primary Care Records at R. Doc. 10-9, pp. 16-17, 21, 23-24, 28-29 (noting labs and other studies at hospital were normal), 33-34, 39-40 (noting all negative workup at ER), 42, 45, 49-50, 57-58, 62-63, 65 and R. Doc. 10-10, pp. 3-4, 8.
[43] R. Doc., 10-9, p. 42.
[44] R. Doc. 10-9, p. 41.
[45] R. Doc. 10-11, pp. 298-300
[46] R. Doc. 10-11, p. 299.
[47] R. Doc. 10-3, p. 26.
[48] R. Doc. 10-3, p. 26, citing OLOL medical records at R. Doc. 10-10, p. 258.

Analysis

Plaintiff argues that the ALJ legally erred in her evaluation of the opinions of FNP Bryant and Dr. Mammoser, citing *William T. v. Commissioner of Social Security*, No. 16-55, 2020 WL 6946517 (N.D. Tex. Nov. 25, 2020). However, unlike the *William T.* case where the ALJ failed to even mention the medical opinion of the Plaintiff's treating physician, here, the ALJ discussed the persuasiveness of each of the medical opinions presented in the context of the objective medical evidence.

The standard for an adequate discussion of the persuasiveness of a medical opinion is whether the court can meaningfully review the ALJ's explanation regarding the particular opinion to determine whether it is supported by substantial evidence.[49] There must be a discernible "logic bridge" between the evidence and the ALJ's persuasiveness finding.[50] The ALJ is not required to provide a point-by-point discussion of how every medical opinion was considered, as long as some explanation is provided for the rejection of a medical opinion of record.[51]

After providing a detailed summary of Plaintiff's testimony and medical records, the ALJ explained the basis for a determination that the opinions were (or were not) supported by, or consistent with, the objective medical evidence. While the ALJ's evaluation was not strictly confined to a single paragraph, 20 C.F.R. § 404.1520c does not require the discussion to be structured this way. The pertinent inquiry is only whether the ALJ's discussion of the medical evidence and detailed RFC analysis are sufficient, *in toto*, to create an "accurate and logical bridge" between the evidence and the ALJ's persuasiveness findings. In this case, they are. Contrary to Plaintiff's contentions otherwise, the ALJ articulated her reasons for rejecting the additional

---

[49] *Owens v. Kijakazi*, No. 20-389, 2023 WL 6150244, at *3 (M.D. La. Sep. 20, 2023), citing *Pearson v. Commissioner of Social Security*, No. 20-166, 2021 WL 3708047 (S.D. Miss. Aug. 11, 2021).
[50] *Owens*, 2023 WL 6150244, at *3, citing *Pearson*, 2021 WL 3708047, *5.
[51] *Ray*, 2022 WL 3566844, at *4, citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000).

9

limitations suggested by FNP Bryant and Dr. Mammoser by citing the objective medical evidence that failed to support the extreme limitations proposed by these providers.[52] The ALJ's explanation, in conjunction with the summary of the medical evidence, are sufficient for the Court to draw a logical conclusion and to meaningfully review whether substantial evidence supported the ALJ's decision regarding the persuasiveness of the medical opinions.

> 3. **The ALJ Did Not "Play Doctor" With Her Formulation of the Plaintiff's RFC; the Factual Findings Were Supported by Substantial Evidence in the Record**

Finally, Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence in the record because the ALJ did not fully adopt any of the medical opinions regarding Plaintiff's physical condition, including that of the state agency medical consultant, Nancy Cook, M.D.[53] Plaintiff therefore contends this constituted the ALJ's improper attempt to "play doctor" by fashioning an RFC determination without the assistance of a medical professional. This argument implies that an RFC determination must be entirely premised on medical opinions when the applicable regulation proves otherwise. Specifically, 20 C.F.R. §404.1545(a)(1) provides that the Commissioner must assess the RFC based on all the relevant evidence in the case record.[54]

The ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a), except she can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; never be exposed to concentrated exposure of pulmonary irritants, such as

---

[52] Plaintiff also argues that the ALJ mischaracterized the evidence in finding "no basis for a sit/stand at will option or an absenteeism limitation." R. Doc. 13, p. 13. Leaving aside that this asks the Court to reweigh evidence, Plaintiff testified that she can sit without limitation. R. Doc. 10-3, p. 125.
[53] R. Doc. 10-3, p. 25 (finding Dr. Cook's opinion unpersuasive and inconsistent with the objective medical evidence of record and with Plaintiff's testimony regarding her physical limitations and activities of daily living that warrant more significant limitations than those determined by Dr. Cook).
[54] The ALJ also complied with Social Security Ruling 96–8p by considering all the medical evidence and analyzing each alleged impairment before formulating the Plaintiff's RFC. *See* R. Doc. 10-3, pp. 20-26. *See also Porter v. Barnhart*, 200 Fed.Appx. 317, 319 (5th Cir. 2006).

10

gases or fumes; never drive; and never be exposed to unprotected heights or dangerous machinery.[55] In support of this RFC, the ALJ methodically discussed the evidence in the record, including the medical evidence, the medical opinions of FNP Bryant and Dr. Mammoser, the opinions of state agency medical consultant, Dr. Cook, and state agency psychological consultant, David Atkins, Ph.D., and reviewed the testimony from the February 2022 hearing.[56] Contrary to Plaintiff's contentions, the ALJ did accept portions of the medical opinions that she found to be supported by the other medical evidence in the record.[57] She was not required to adopt, in full, the opinions of Dr. Cook, Dr. Mammoser, or FNP Bryant.[58]

The case Plaintiff cites to suggest the ALJ was improperly "playing doctor" involved far different facts. In *Frank v. Barnhart*,[59] the Fifth Circuit was considering a decision in which the ALJ expressed his own opinion that the Plaintiff's disabling symptoms should result in "observable findings of atrophy or muscle tone loss" without relying on a medical expert's help. Notably, the *Frank* court affirmed the grant of summary judgment in favor of the Commissioner, finding that any error was harmless.

Here, substantial evidence supports the ALJ's determination without fully adopting any of the medical opinions or prior administrative medical findings in the record. With respect to the more extreme absenteeism and concentration limitations suggested by Plaintiff's medical sources, the ALJ cited Plaintiff's consistently normal physical and neurological findings in her medical

---

[55] R. Doc. 10-3, p. 21.
[56] R. Doc. 10-3, pp. 19-26.
[57] *See, e.g.,* R. Doc. 10-3, p. 26, where the ALJ found FNP Bryant's opinion that the Plaintiff had no sitting limitation persuasive.
[58] *Webster*, 19 F.4th at 719 ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards").
[59] 326 F.3d 618, 622 (5th Cir. 2003).

11

records.[60]

The ALJ rejected Dr. Cook's PAMF for the opposite reason, finding that Dr. Cook did not sufficiently account for Plaintiff's limitations. Specifically, the ALJ found that Dr. Cook's opinion that Plaintiff could sit, stand, and walk a total of six hours of an eight-hour day, and push, pull, and operate hand and foot controls without limitations were not supported by the record evidence, including Plaintiff's testimony.[61]

The ALJ's decision in this case adopted a middle ground between the medical opinions presented by FNP Bryant and Dr. Mammoser, and the PAMF presented by Dr. Cook. The Fifth Circuit found no error when presented with a similar situation where no medical opinion or PAMF was adopted in its entirety in the crafting a claimant's RFC but other substantial evidence supported the ALJ's decision.[62]

Here, the RFC determination complied with the requirements of 20 C.F.R. § 404.1545 and those findings adequately "traced the path of her reasoning"[63] and were supported by evidence that amounts to more than a mere scintilla. Consequently, the ALJ's findings were based on the proper legal standards and are properly supported by substantial evidence in the record.

## III.   RECOMMENDATION

Plaintiff's claim of reversible error is without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED**

---

[60] R. Doc. 10-3, p. 26. Plaintiff's own testimony also indicated that her staring spells may occur less frequently than the medical opinions of FNP Bryant and Dr. Mammoser suggest, as Plaintiff testified that she can go weeks without having one of the spells. R. Doc. 10-3, p. 110.
[61] R. Doc. 10-3, p. 25, citing R. Doc. 10-4, pp. 18-23.
[62] *Webster*, 19 F.4th at 719.
[63] *See Price v. Astrue*, 401 Fed.Appx. 985, 986 (5th Cir. 2010).

that the final decision of the Acting Commissioner of Social Security be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g), and that this action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on January 22, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**